UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DIVERSIFIED CONSTRUCTION OF WNY, INC.,

                Plaintiff,

v.                                 **DECISION AND ORDER**
                                         04-CV-739S

SHEDS USA, INC.

                Defendants.

## I.  INTRODUCTION

Plaintiff, Diversified Construction of WNY, Inc. ("Diversified") alleges that defendant Sheds USA, Inc. ("Sheds"), entered into a contract with Diversified whereby Sheds agreed to provide Diversified with a minimum number of storage shed installations per week within a specific geographical radius to support Diversified's business as an installer for Sheds. Diversified contends that Sheds breached the agreement by failing to schedule Diversified for the minimum number of installations and by scheduling Diversified for installations outside the agreed upon radius.  Diversified seeks damages, including lost profits, as a result of Sheds' alleged breach of their agreement.  Pending before the Court is Sheds' Motion for Summary Judgment.  (Docket No. 26).

## II.  BACKGROUND

**A.**    **Procedural History**

Diversified filed this action in New York State Supreme Court, Erie County, on August 24, 2004, against Sheds and Home Depot, Inc.  Sheds removed the action to this Court on September 13, 2004.  By Order dated May 25, 2005 and filed on May 26, 2005,

this Court (Elfvin, J.) dismissed Diversified's claims against Home Depot and also dismissed Diversified's fraud claim against Sheds.

In the instant Motion, Sheds argues that the undisputed facts demonstrate that Sheds advised Diversified that it was operating in a developing territory, that Sheds advised Diversified that its installations would be dependent, in part, on sales, that Sheds never promised a specific number of shed installations per week or installations within a certain geographic radius, and that Sheds and Diversified never contemplated that Sheds would be responsible for any lost profits. In support of its Motion, Sheds filed the Declaration of Frank Wiedeman (Docket No. 27), the Declaration of Michael Cerrone, Esq. (Docket No. 28), Exhibits to the Wiedeman and Cerrone Declarations (Docket No. 29), a Statement of Facts Not in Dispute (Docket No. 30), a Memorandum of Law (Docket No. 31) and a Reply Memorandum of Law (Docket No. 35).

In opposition to the Motion, Diversified filed a document titled "Affidavit of John Militello and Plaintiff's Counter-Statement of Undisputed Facts" (Docket No. 33). Diversified's submission fails to comply with the Local Rules of Civil Procedure for the Western District of New York in that Diversified failed to file a memorandum of law in opposition to the motion as required by Local Rule 7.1(e) and further failed to file a "separate, short and concise statement of material facts as to which it is contended that there exists a genuine issue to be tried" as required by Local Rule 56.1(b).

**B.   Facts**

Sheds is a manufacturer and distributor of home storage sheds. (Docket No. 30, ¶ 5). Sheds, through independent contractors called installers, also assembles and installs its storage sheds at the homes of customers who have purchased the sheds at various

retail outlets.  (Id. ¶¶ 9-11).  The installers transport the sheds to the homes of the customers and assemble and install them.  (Id. ¶ 11).  Diversified is a building contractor located in Cheektowaga, New York.  It is owned by John Militello.  Prior to its dealings with Sheds, Diversified's business focused primarily on concrete work, and the remodeling of residential and commercial properties.  (Docket No. 30, ¶ 4).

In late 2002 or early 2003, Sheds advertised for an installer to service the Western New York area.  (Id. ¶ 21).  Sheds' employee, Frank Wiedeman, then a Field Operations Manager, held interviews of candidates for the installer position at the Holiday Inn in Hamburg, New York in early 2003.  (Id. ¶ 22).  Wiedeman interviewed Militello and his employee Matt Miller, on behalf of Diversified.  (Id. ¶ 23).  At that interview, Wiedeman informed Diversified that the average full time installer could install three to four sheds per day.  Wiedeman showed Diversified a spreadsheet setting forth estimated revenue, expenses and income that could be made by full time installers.  (Docket No. 30, ¶ 36). Wiedeman indicated that its amounts were calculated based on an installer working with a partner.  (Id. at 39).  Diversified told Wiedeman that it was a corporation and would be operating its installation business for Sheds within the confines of that corporate structure. Wiedeman expressed concern as to whether Diversified would be able to be profitable as an installer using that corporate structure.  (Id. ¶¶ 39-40).

The parties offer sharply differing accounts of the conversation between Wiedeman and Diversified about the geographic area Diversified would be expected to cover as a Sheds installer.  Wiedeman contends that he advised Diversified that, as Western New York was a developing territory, it could be assigned shed installations in the area west of Albany to Erie, Pennsylvania, and including Syracuse, Rochester, and Buffalo.  Diversified,

on the other hand, contends that Wiedeman did not advise them that Western New York was a developing territory, and represented that Diversified would be assigned installations within a 37.5 mile radius of its yard in Cheektowaga and that installations for each day would be clustered within 20 minutes driving time of each other.  Diversified contends that Wiedeman represented that Diversified should expect at least 16 shed installations per week.  Diversified acknowledges that the spreadsheets provided by Wiedeman illustrate estimates of potential income but asserts that it relied on Wiedeman's representation that Diversified would be provided with the same numbers of installations as illustrated in the spreadsheets.

Diversified was offered the opportunity to become a Sheds installer.  (Id. ¶ 43). Diversified was provided with a copy of Sheds' Delivery and Installation Contractor's Manual ("the Manual").  Diversified worked as a Sheds installer for only a short period of time — roughly six to eight weeks — before terminating the arrangement. (Docket No. 30, ¶ 50; Docket No. 33, p. 16).

### III.  DISCUSSION AND ANALYSIS

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A "genuine issue" exists "if the evidence is such that a reasonable jury could

return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248. In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed.2d 142 (1970). However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.   Contract Claim**

Sheds argues that it is entitled to summary judgment because Diversified cannot

show a disputed issue of fact as to whether Sheds promised to assign any minimum number of shed installations to Diversified. Sheds contends that the undisputed facts demonstrate that it advised Diversified as to the number of sheds typically installed by an average installer and projected a "rough estimate" of potential profits capable of being earned by an installer working with a partner. Sheds asserts that it advised Diversified that the Buffalo area was a developing territory, that the number of installations would depend on sales in the area as well as other unknown considerations such as market conditions and climate. Sheds contends that the deposition testimony of both Miller and Militello demonstrate that Diversified was aware that any profit projections were estimates only and were not intended to be a guarantee.

In order to prevail on a breach of contract claim, a plaintiff must show (1) the existence of a contract; (2) performance by one party; (3) breach by the other party; and (4) damages resulting from the breach. See Terwilliger v. Terwilliger, 206 F.3d 240, 245-45 (2d Cir. 2000); Furia v. Furia, 116 A.D.2d 694, 494 N.Y.S.2d 12, 13 (2d Dep't 1986). To establish the existence of a contract under New York law, a plaintiff must allege an offer, acceptance, consideration, mutual assent, and intent to be bound. Rozsa v. May Davis Group, Inc., 152 F. Supp. 2d 526, 533 (S.D.N.Y. 2001). The terms of the contract must also be ascertainable. "The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to . . . . If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." 116 Mamaroneck Ave. Corp. v. 151 East Post Road Corp., 78 N.Y.2d 88, 91, 575 N.E.2d 104, 571 N.Y.S.2d 686, 687 (1991).

A genuine issue of material fact exists as to whether a contract was entered into between these parties.  While Sheds argues that its Manual constitutes the agreement between the parties, and represents that fact to be undisputed, an examination of the record demonstrates that such is not the case.  In its responses to Sheds' interrogatories, and in its opposition to this Motion, Diversified stated that its agreement with Sheds is comprised of the manual and other documents "in combination with the oral statements and agreements between [Diversified's] representatives and Frank Weideman [sic]." (Docket No. 29, Ex. 17(Q), p. 3).  Therefore, contrary to Sheds' representation, whether the manual constitutes the agreement between these parties is not undisputed.

Further, while the Manual discusses, in great detail, the manner in which shed installations are to be conducted, it does not discuss any of the terms at issue in this lawsuit.  The Manual does not address Diversified specifically, but rather applies to all installers.  The Manual does not define the territory Diversified was to service.  Instead, Sheds relies on the fact that Wiedeman allegedly informed Diversified at the interview as to this crucial term.  Thus, to the extent the Manual may constitute a portion of the overall agreement, it does not constitute the agreement in its entirety.

The portions of the depositions of Frank Wiedeman, John Militello and Mark Miller attached to the Motion reveal sharply differing accounts of the substance of Wiedeman's interview with Diversified's representatives.  Militello and Miller contend that Wiedeman advised them that Diversified should be prepared to install at least 16 sheds per week and that Diversified's installations would be clustered within a certain geographic radius. Militello and Miller contend that Weidemen did not advise them that Diversified would be responsible for territory extending east to Albany.  Wiedeman contends that he did advise

Diversified of the extensive territory for which it would be responsible, that he advised Diversified that they should be prepared to install an average of 16 sheds per week but never guaranteed a certain number of installations per week.

Such disputes go to the fundamental issue of whether an agreement was actually reached, and if so, the agreed upon terms. These are issues for the trier of fact. Accordingly, Defendant Sheds' Motion for Summary Judgment is denied.

**C.     Claim for Lost Profits**

Sheds also agues that it is entitled to summary judgment dismissing Diversified's claim for lost profits because Diversified's calculation of such damages is based on speculation and because Diversified has not demonstrated a genuine issue of fact as to whether such damages were contemplated by the parties at the time the contract was made.

A plaintiff can recover lost profits due to a breach of contract only if he can demonstrate the existence and the amount of such damages with reasonable certainty. Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261, 493 N.E.2d 234, 235, 502 N.Y.S.2d 131, 132 (1986). "[T]he damages may not be merely speculative, possible or imaginary." Id. Rather, they must be "capable of measurement based upon known reliable factors without undue speculation." Ashland Mgt. Inc. v. Janien, 82 N.Y.2d 395, 403, 624 N.E.2d 1007, 1010, 604 N.Y.S.2d 912, 915 (1993). Projections of future profits based upon "a multitude of assumptions" that require "speculation and conjecture" and few known factors do not provide the requisite certainty. Kenford, 67 N.Y.2d at 262, 493 N.E.2d at 236, 502 N.Y.S.2d at 133.

The evidence cited by Diversified is legally insufficient to support its claim for lost

profits. Diversified actually engaged in the business of installing sheds for a brief period of time, yet failed to submit any evidence demonstrating that it could calculate lost profits with any degree of certainty. Militello's lost profit calculations are not based on any actual expenses incurred by Diversified, but rather consist of the cost estimates for nails, fuel and a truck as provided by Sheds in the materials provided to Diversified during the interview process. (Docket No. 30, Ex. S). In his deposition, Militello admitted that he based his lost profit calculations on Sheds' estimated expenses and not on expenses actually incurred. (Docket No. 30, Ex. G p. 102-03).

Accordingly, the Court concludes that Diversified has failed to raise a genuine issue of material fact as to whether it can calculate its alleged lost profits with any reasonable degree of certainty and its claim for lost profits is dismissed.

### IV.  CONCLUSION

For the reasons stated, Sheds' Motion for Summary Judgment is DENIED as to the claim for breach of contract as there exists a genuine issue of material fact as to whether Sheds and Diversified reached a mutual understanding as to the geographic area to be serviced by Diversified as an installer for Sheds and is GRANTED as to Diversified's claim for lost profit damages as there is no genuine issue of material fact that Diversified cannot calculate its alleged lost profit damages with a reasonable degree of certainty.

## V.  ORDERS

IT IS HEREBY ORDERED that Sheds' Motion for Summary Judgment is DENIED as to Diversified's claim for breach of contract and is GRANTED as to Diversified's claim for lost profit damages.

SO ORDERED.

Dated:   April 24, 2008
         Buffalo, New York

                                                /s/William M. Skretny
                                                WILLIAM M. SKRETNY
                                                United States District Judge